IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL SCHEUERMAN, #268-375   :

    v.   :   Civil Action No. DKC 09-1386

K. BOZMAN, et al.   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this prisoner's civil rights case are: 1) Plaintiff's motion for preliminary injunction or temporary restraining order (Paper 2); 2) Plaintiff's motion for permanent injunction (Paper 17); and Defendants' motion to dismiss or, in the alternative, for summary judgment (Paper 22). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion to dismiss will be granted and Plaintiff's motion for preliminary injunction or temporary restraining order and motion for permanent injunction will be denied as moot.

**I.   Background**

Plaintiff, Daniel Scheuerman, # 268-375, is an inmate currently incarcerated at the Eastern Correctional Institution ("ECI") in Maryland.  Defendants are Krista Bozman, who is

Plaintiff's case manager, and Kathleen Green, the ECI warden. (Paper 16 ¶ 1-3).

Plaintiff alleges that on or before June 10, 2009, the State of Maryland ("State"), through Defendants, informed Plaintiff that the State intended to transfer Plaintiff "to an undisclosed out-of-state prison, because, the State alleges, it can no longer safely house Plaintiff in any State prison." (Paper 16 at ¶ 4). Plaintiff states, "The State's decision to transfer [Plaintiff] is allegedly based on the State's interception of a letter on April 22, 2009, that the State contends shows [Plaintiff's] former gang intends to seek retribution (*i.e.* a 'hit') for his alleged cooperation with the State regarding a murder committed by a fellow gang-member." (*Id.* at ¶ 5)(citing Paper 8, attach. 2, at 7-8). The letter that Plaintiff references was sent by one of the defendants in the criminal case related to the murder Plaintiff mentions and was sent to a commander of a prison gang, John Davis, # 333-197, who was housed at ECI. Plaintiff alleges that, on April 23, 2009, the State issued an order for Plaintiff to be transferred to an out-of-state prison. (*Id.* at ¶ 6). Plaintiff asserts that the State knew that Plaintiff's "gang would seek retribution and, to ensure his safe housing, transferred Plaintiff to protective custody at ECI." (*Id.* at ¶ 7). Plaintiff contends that, as of August 20, 2009, the State had

2

safely housed him in Maryland for eight months after "it first admitted that it feared retribution against Plaintiff by his gang." (*Id.* at ¶ 8).

Plaintiff filed a complaint in this court on May 27, 2009. (Paper 1). After counsel was appointed to represent him, Plaintiff filed an amended complaint on August 20, 2009. (Paper 16). Plaintiff's amended complaint seeks injunctive relief for the State's alleged violation of Plaintiff's "rights to Due Process and Equal Protection guaranteed by the Maryland and the United State's [sic] Constitutions." (*Id.* at ¶ 9-11). Defendants allegedly violated Plaintiff's rights because Defendants "failed to apply [the State's] own regulations before ordering [Plaintiff's] interstate transfer," and because the Defendants "failed to consistently apply [the State's] own regulations before ordering [Plaintiff's] interstate transfer." (*Id*. at ¶ 9-10). Plaintiff asks for a temporary and preliminary injunction preventing the State from transferring him while he conducts discovery and a permanent injunction prohibiting the State from transferring him out of the State of Maryland. (*Id.* at 3).

The regulations that Plaintiff references are the requirements set forth in the Maryland Division of Correction's Case Management Manual ("CMM"). The CMM limits an inmate's eligibility for voluntary or involuntary transfer to four

situations: (1) the prisoner cannot "be housed safely in any Maryland prison"; (2) the prisoner is designated as a "special management case"; (3) the prisoner was residing in the transferee state prior to the current incarceration; and (4) the prisoner "[d]oes not have an unadjudicated Maryland or Immigration and Customs Enforcement ("ICE") detainer (unless the inmate's transfer is being considered for reasons of protection)." (Paper 8, attach. 2, at 1). If the State transfers Plaintiff to an out-of-state prison, that transfer would occur pursuant to the Interstate Corrections Compact ("ICC"), which the State has incorporated into the CMM as Section 21. (*Id.* at 1-4).

## II. Motion to Dismiss, or in the Alternative, for Summary Judgment

Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. (Paper 22, at 1).

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading

standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th

Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

   **B.   Analysis**

Defendants argue that Plaintiff has failed to state a claim. Defendants assert that Plaintiff "is currently in danger of being harmed as a result of his assistance in building a case and agreeing to testify against fellow gang members." (Paper 22, at 6). Defendants contend that it is necessary to transfer Plaintiff to an out-of-state correctional facility in order to keep him safe. (*Id.* at 6-8). Defendants argue that Plaintiff has failed to state a claim under the Due Process Clause because Plaintiff has not identified a legitimate liberty interest that Defendants have allegedly violated. Defendants argue, "A classification decision or a transfer from one prison facility to another does not implicate a protected liberty interest or

state a claim under § 1983."[1]  (*Id.* at 8)(citing *Meachum v. Fano*, 427 U.S. 215 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987), *cert. denied*, 484 U.S. 864 (1987)).  Defendants additionally assert that they are protected from liability by qualified immunity, though they do not provide any argument in support of this point.[2]  (Paper 22, at 1).  Defendants ask for Plaintiff's case to be dismissed.  (*Id.* at 11-12).

Plaintiff counters that Plaintiff has stated a claim under the Due Process Clause of the United States Constitution. Plaintiff argues that he has a liberty interest in his interstate transfer because the CMM regulations curtail the State's discretion as to whether Plaintiff may be transferred. Plaintiff cites *Olim v. Wakinekona*, 461 U.S. 238 (1983), as "the leading Supreme Court case addressing when a state's regulations

---

[1] Though Defendants question at the threshold whether Plaintiff may bring this type of claim pursuant to 42 U.S.C. § 1983, the Supreme Court has made it clear that prisoners may press suits "challenging the conditions of confinement rather than the fact or length of custody" under § 1983. *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974)(citing *Preiser v. Rodriguez*, 411 U.S. 475, 494, 498-99 (1973).  Thus, as a threshold matter, it is appropriate for Plaintiff to challenge the State's intended interstate transfer by suing State officials pursuant to § 1983.

[2] Qualified immunity protects against a suit for damages; here, the primary relief requested is injunctive. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)(cited in *Pearson v. Callahan*, 129 S.Ct. 808, 822 (2009)("noting that qualified immunity is unavailable 'in a suit to enjoin future conduct . . . .'")).

permitting the involuntary transfer of an inmate to another state creates a liberty interest protected by the Due Process Clause." (Paper 25, at 10). Citing *Olim*, Plaintiff asserts, "Even if the Due Process Clause does not in and of itself create a protected liberty interest, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.'" (*Id.*, at 12)(citing *Olim*, 461 U.S. at 249). Plaintiff fails to note that the approach to finding a liberty interest in *Olim* was later rejected by the Supreme Court in *Sandin v. R.D. Conner*, 515 U.S. 472, 483 (1995). As will be explained below, the Supreme Court has articulated a different methodology for determining whether an inmate has a liberty interest protected by the Due Process Clause, and, in this case, a liberty interest cannot be found.

The procedural protections of the Due Process Clause only apply to actions that implicate a protected liberty interest.[3]

---

[3] "Article 24 of the Maryland Declaration of Rights, which provides that 'no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land,' is *in pari materia* with the Due Process Clause of the Fourteenth Amendment." *Doe v. Department of Public Safety and Correctional Services*, 185 Md.App. 625, 636 (2009)(citing *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 628 (2002)).

In the context of incarceration, prisoners do not shed all constitutional rights at the prison gate. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). But, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)(quoting *Price v. Jonston*, 334 U.S. 266, 285 (1948)).

To determine whether Plaintiff has stated a claim under the Due Process Clause, the court must first determine whether Plaintiff has a liberty interest related to his transfer. The parties disagree on what method the court must use to determine whether Plaintiff has a liberty interest. Courts have used different analyses to determine whether a prisoner has a liberty interest that is protected by the Due Process Clause. The United States Supreme Court explained and reconciled those analyses in *Sandin*, 515 U.S. 472. The Court's jurisprudence had resulted in two different methodologies for determining whether a prisoner has a liberty interest. One methodology was set forth in *Wolff*, 418 U.S. 539 and *Meachum*, 427 U.S. 215, and the other was explained in *Hewitt v. Helms*, 459 U.S. 460 (1983).

In *Wolff* and *Meachum*, the Court indicated that prisoners did not have liberty interests outside of the United States Constitution unless a state creates an interest by statute or

9

regulation. In *Wolff*, Nebraska inmates challenged the decision of prison officials to revoke good time credits without adequate procedures. Nebraska had a statute that bestowed mandatory sentence reductions for good behavior, which were revocable only for "flagrant or serious misconduct." *Wolff*, 418 U.S. at 546. The Court held that the Due Process Clause itself does not create a liberty interest in credit for good behavior, but that the state's statutory provision created a liberty interest in a "shortened prison sentence" which resulted from good time credits, which were revocable only if the prisoner was guilty of serious misconduct. *Id.* at 557. Because the Court characterized this liberty interest as one of "real substance," the Court articulated minimum procedures necessary to reach a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Id.* at 556-57.

In *Meachum*, the Court further articulated how state statutes affect prisoners' liberty interests. The Court summarized *Meachum* in *Sandin* as follows:

> Inmates in *Meachum* sought injunctive relief, declaratory relief, and damages by reason of transfers from a Massachusetts medium security prison to a maximum security facility with substantially less favorable conditions. The transfers were ordered in the aftermath of arson incidents for which the transferred inmates were thought to be responsible, and did not entail a loss of good time credits or any period of disciplinary confinement. The Court began

10

> with the proposition that the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. It then held that the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers. It reasoned that a transfer to a maximum security facility, albeit one with more burdensome conditions, was "within the normal limits or range of custody which the conviction has authorized the State to impose." The Court distinguished *Wolff* by noting that there the protected liberty interest in good time credit had been created by state law; here no comparable Massachusetts law stripped officials of the discretion to transfer prisoners to alternative facilities "for whatever reason or for no reason at all."

*Sandin*, 515 U.S. at 478-79 (internal citations omitted).

After *Meachum*, the Court indicated in *Hewitt* that a different method should be used to determine whether a prisoner has a liberty interest. Inmates in *Hewitt* had been confined to administrative segregation and brought a suit alleging that their right to remain in the general prison population was protected by the Due Process Clause. In *Sandin*, the Court explained how the method for determining whether the prisoners had a liberty interest changed in *Hewitt*:

> Instead of looking to whether the State created an interest of "real substance" comparable to the good time credit scheme of *Wolff*, the Court asked whether the State had gone beyond issuing mere procedural guidelines [in its prison regulations] and had used "language of an unmistakably mandatory character" such that the incursion

11

> on liberty would not occur "absent specified
> substantive predicates."

*Sandin*, 515 U.S. at 480 (internal citation omitted). Following *Hewitt*, "no longer did inmates need to rely on a showing that they had suffered a 'grievous loss' of liberty retained even after sentenced to terms of imprisonment." *Id.* Instead, courts "wrestled with the language of intricate, often rather routine prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." *Id.* at 480-81.

In *Sandin*, the Court determined that the post-*Hewitt* cases had "produced at least two undesirable effects": "First, [*Hewitt*] creates disincentives for States to codify prison management procedures in the interest of uniform treatment." "Second, the *Hewitt* approach has led to the involvement of federal courts in the day-to-day management of prisons . . . . In so doing, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id.* at 482 (citations omitted).

Thus, the Court returned "to the due process principles [the Court believes] were correctly established and applied in

*Wolff* and *Meachum*." *Id.* at 483. The Court has therefore established:

> Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84 (internal citations omitted). In other words, inmates' liberty interests under the Due Process Clause are limited to: (1) those situations in which mandatory language in state laws or regulations creates enforceable expectations, as in *Wolff* (where a state statute mandated that good time credits were revocable only in certain circumstances) and *Meachum* (where the Court did *not* find a liberty interest absent a state statute stripping officials of the discretion to transfer prisoners to alternative facilities for any or no reason); and (2) a restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. In *Sandin*, this approach led the Court to conclude that an inmate's "discipline in segregated confinement did not present the type of atypical, significant

13

deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

The Supreme Court has addressed the issue of whether inmates have a liberty interest protected by the Due Process Clause in regard to their interstate transfer. Before *Sandin*, the Court found in *Olim*, 461 U.S. 238, that an interstate prison transfer did not deprive an inmate of any liberty interest protected by the Due Process Clause, even though the transfer covered a substantial distance from Hawaii to California. The Court held in *Olim*: "[A]n interstate prison transfer, including one from Hawaii to California, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself." *Id.* at 248. "Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." *Id.* at 245. "Statutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States." *Id.* at 246. "Confinement in another State . . . is 'within the normal limits or range of custody which the conviction has authorized the transferring State to impose.' Even when, as here, the transfer involved long distances and an ocean crossing, the confinement remains within constitutional limits." *Id.* at 247. Though *Olim* was decided using the *Hewitt*

14

approach, the Court in *Sandin* noted that it was not technically overruled because the Court concluded that no liberty interest was at stake.[4]  *Sandin*, 515 U.S. at 483 n.5.

Here, Plaintiff has not stated a claim that may survive because Plaintiff has not identified a liberty interest that is protected by the Due Process Clause.[5]  First, Plaintiff has not identified a state statute or regulation that has mandatory language such that Plaintiff could have an enforceable expectation of a liberty interest.  Section 21(F) of the CMM leaves the initial decision regarding transfer solely within the Warden's discretion and does not create a right to a hearing before transfer.  (*See* Paper 8, attach. 2, at 2).  The lack of "mandatory language" in the CMM shows that there is not a State-created liberty interest that creates a due process right under *Wolff* and *Meachum*.  Second, an interstate transfer is not "such an atypical and significant hardship that a liberty interest exists."  *Sandin*, 515 U.S. at 485-87.  "[T]he ultimate

---

[4] The Court noted in *Sandin*, however, that it abandoned the approach that undergirded the other part of *Olim* that Plaintiff cites in his reply brief.  It is no longer the case, as Plaintiff argues, that "a State creates a protected liberty interest by placing substantive limitations on official discretion."  (Paper 25, at 12)(citing *Olim*, 461 U.S. at 249).

[5] Plaintiff includes the words "equal protection" in his amended complaint, but does not differentiate that from his due process arguments and has not articulated any basis for that claim.

15

determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)(citing *Sandin*, 515 U.S. at 485-87). The Fourth Circuit has already determined in *Cochran v. E.C. Morris*, 73 F.3d 1310 (4th Cir. 1996), that "a claim that state regulations created a liberty interest in freedom from interstate transfer must fail given the Supreme Court's admonition that such liberty interests only inhere in regulations that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1318; *see also Olim*, 461 U.S. at 238 ("Confinement in another State is within the normal limits or range of custody which the conviction has authorized the transferring State to impose."). Here, where the CMM regulations are of general application and contemplate routine transfers, they do not impose "atypical and significant hardship on the inmate" as defined in *Sandin*.

Because Plaintiff has not pled a legitimate liberty interest — a necessary element of a procedural due process claim — Plaintiff has failed to state a claim and his complaint will be dismissed.

**III. Motions for Preliminary Injunction, Temporary Restraining Order, and Permanent Injunction**

Because Plaintiff's complaint will be dismissed for failure to state a claim, Plaintiff's motions for preliminary injunction, temporary restraining order, and permanent injunction will be denied as moot.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be granted and Plaintiff's motions will be denied as moot. A separate Order will follow.

          /s/
DEBORAH K. CHASANOW
 United States District Judge
